OPINION
{¶ 1} Appellants, David Guethlein ("Guethlein"), Heidelberg Distributing Co. ("Heidelberg"), and Jungle Jim's Market, Inc. ("Jungle Jim's") (collectively, appellants), appeal from a judgment of the Franklin County Court of Common Pleas affirming three orders of appellee, Ohio State Liquor Control Commission ("commission") that found appellants violated a state liquor law and related regulations. In this consolidated appeal, appellants assign a single error:
THE COMMON PLEAS COURT ABUSED ITS DISCRETION IN AFFIRMING THE ORDERS OF THE LIQUOR CONTROL COMMISSION, IN THAT THE ORDERS ARE NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND ARE NOT IN ACCORDANCE WITH LAW.
Because the evidence does not support a violation of the provisions cited in the violation notice sent to each of the appellants, we reverse.
 {¶ 2} According to the investigator's report, to which the parties stipulated in large part, Division of Liquor Control Investigator Eric Wallace entered Jungle Jim's, a retail liquor permit holder, on May 14, 2004 as part of a routine check. Wallace quickly noticed a Triumph motorcycle, with an approximate value of $8,500, surrounded by a Fuller's beer display. Jungle Jim's general manager informed Wallace that Heidelberg brought the motorcycle to Jungle Jim's at the beginning of May 2004; the motorcycle was to be removed the third week of that month.
 {¶ 3} While Wallace was at Jungle Jim's, Guethlein, a solicitor with Heidelberg, entered the premises. In response to Wallace's questions regarding the display, Guethlein prepared a written statement. In it, Guethlein explained that on behalf of Heidelberg he set forth a sales presentation to Jungle Jim's for Fuller's beer in connection with the motorcycle display. Guethlein stated he requested permission from Jungle Jim's to use the motorcycle, and he physically brought the motorcycle to Jungle Jim's and placed it with the display. Jungle Jim's general manager similarly informed Wallace that Guethlein asked him if Heidelberg could bring in the motorcycle display, and the manager agreed. Although appellants stipulated to a majority of the facts, they did not stipulate ownership of the motorcycle, and they denied any violations.
 {¶ 4} Based on the investigative report, (1) Guethlein was charged with violating Ohio Adm. Code 4301:1-1-43(A) and (B)(8); (2) Heidelberg was charged with violating Ohio Adm. Code4301:1-1-43(A) and (B)(8), and R.C. 4301.24; and (3) Jungle Jim's was charged with violating Ohio Adm. Code 4301:1-1-43(A) and (B)(8), and R.C. 4301.24. Following a hearing, the commission found appellants' violations as charged, but it did not impose any penalty. The court of common pleas affirmed the commission, finding the orders to be supported by reliable, probative and substantial evidence and in accordance with law. Appellants appeal, contending the common pleas court abused its discretion in affirming the commission's orders.
 {¶ 5} Under R.C. 119.12, when a common pleas court reviews an order of the administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law. Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108, 110-111. The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Provisions Plus, Inc. v.Ohio Liquor Control Comm., Franklin App. No. 03AP-670,2004-Ohio-592, at ¶ 7, quoting Lies v. Veterinary Med. Bd.
(1981), 2 Ohio App.3d 204. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Conrad, supra.
 {¶ 6} By contrast, an appellate court's review is more limited. Provisions Plus, citing Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619. The appellate court determines whether the trial court abused its discretion. Id. Absent an abuse of discretion, the appellate court may not substitute its judgment for that of the administrative agency or the common pleas court. Id. An appellate court, however, has plenary review of purely legal questions. Id. Because this appeal involves both questions of law and fact, the standards of review will be applied accordingly.
 {¶ 7} Heidelberg and Jungle Jim's both were found to have violated R.C. 4301.24. Appellants assert that because Joe's Cycle Shop, an unregulated third party, owned the motorcycle, Heidelberg and Jungle Jim's did not violate R.C. 4301.24. More specifically, appellants maintain that a wholesale distributor cannot "gift or loan" property in violation of the statute if the property is not its to loan or gift. The commission responds that nothing in R.C. 4301.24 requires proof of ownership. Rather, according to the commission, Heidelberg's physical act of moving the motorcycle from Joe's Cycle Shop to Jungle Jim's violates R.C. 4301.24.
 {¶ 8} R.C. 4301.24 provides that "[n]o manufacturer shall aid or assist the holder of any permit for sale at wholesale, and no manufacturer or wholesale distributor shall aid or assist the holder of any permit for sale at retail, by gift or loan of anymoney or property of any description or other valuable thing, or by giving premiums or rebates. * * * [N]o holder of any such permit shall accept the same[.]" (Emphasis added.) For this section, a wholesale distributor, such as Heidelberg, is defined as "a person engaged in the business of selling to retail dealers for purposes of resale." R.C. 4301.01(B)(10).
 {¶ 9} At the administrative hearing, the investigator testified he assumed Heidelberg owned the motorcycle, as nothing near the display indicated to the contrary. In response to a question from the commission's chairman, appellants' counsel stated that Joe's Cycle Shop was the actual owner. Counsel further stated, "[i]t was still the motorcycle dealer's. It was a promotion, and the cycle shop put it in there, because as the report said, the motorcycle was going to go to different retail locations. Joe's Motorcycle Shop was going to get, obviously, the advertising benefits of having the motorcycle in a lot of locations, such as Jungle Jim's." (Tr. 23.)
 {¶ 10} Although the investigator further testified it did not matter who owned the motorcycle, one of the commissioners suggested that if a wholesale distributor does not own the motorcycle, it can neither give nor loan the motorcycle in violation of R.C. 4301.24. Consistent with that view, appellants presented and relied on the expert testimony of Timothy Bechtold in connection with the alleged violations of both R.C. 4301.24
and Ohio Adm. Code 4301:1-1-43(B)(8). Testifying in the context of Ohio Adm. Code 4301:1-1-43(B)(8), which deals with utilitarian display enhancers, Bechtold, counsel for regulatory affairs for the Wholesale Beer and Wine Association of Ohio, stated that if the item in question belongs to a third party other than a manufacturer, supplier or distributor, use of the item is outside the parameters of the rule. According to Bechtold, "it's not an uncommon practice for items other than — items that belong to a third party such as motorcycles, cars, wave runners, golf carts, if they belong to another entity and are incorporated into a display * * * providing that item is simply outside the scope of the rule[.]" (Tr. 18.)
 {¶ 11} Interpretation of a statute or administrative rule requires that "the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. * * * That body should be held to mean what it has plainly expressed, and hence no room is left for construction." State v. Hairston, 101 Ohio St.3d 308,2004-Ohio-969, at ¶ 12, quoting Slingluff v. Weaver (1902),66 Ohio St. 621. If a term or phrase is not ambiguous, a court does not need to interpret it; the court simply must apply it. Id.;Benjamin v. Credit General Ins. Co., Franklin App. No. 04AP-642, 2005-Ohio-1450.
 {¶ 12} Courts lack the authority to ignore the plain language of a statute under the guise of statutory interpretation or liberal or narrow construction. Covington v. Airborne Express,Inc., Franklin App. No. 03AP-733, 2004-Ohio-6978. Rather, a court must give effect to the words used in the statute, accord the words their usual and customary meaning, and not delete words used or insert words that are not used. Cleveland Elec. Illum.Co. v. Cleveland (1988), 37 Ohio St.3d 50, paragraph three of the syllabus; Benjamin, supra.
 {¶ 13} Although R.C. 4301.24 uses the terms "gift" and "loan," neither of these terms is specifically defined. The usual and customary meaning of "gift" is a "voluntary transfer of property to another made gratuitously and without consideration." Black's Law Dictionary (6 Ed. 1990) 688. Implicit in the definition is the donor's interest in the property capable of being transferred or gifted to another.
 {¶ 14} For example, in the context of property law, a gift requires an intent to irrevocably part with the donor's "ownership, dominion and control" of the gifted property.Kaforey v. Burge (May 10, 1995), Summit App. No. 17050 (noting the elements of a gift are an intention on the part of the donor to "transfer the title and right of possession of the subject property," and delivery of the property along with "relinquishment of ownership, dominion and control over it"); 38 American Jurisprudence 2d (1999) Section 1 (stating a gift is a voluntary transfer by one person to another without consideration or compensation, "whereby the donor manifests an intent that there be a present and irrevocable transfer of title to the subject matter of the gift").
 {¶ 15} Similarly, the court in Carter v. Buckingham (Ohio Super. 1855), 12 O Dec Rep 202, pointed out that a gift "must be by words expressing a present change of ownership in the thing given." Thus, in Bobo v. Stansberry, 162 Ohio App.3d 565,2005-Ohio-3928, the court concluded the elements of a gift were met where the husband had a "vested interest" capable of being a gift. See, also, 38 American Jurisprudence 2d (1999) Section 13 (stating that "[t]he effectiveness of a gift also depends upon whether the donor had some legal or equitable interest to give. If the donor lacks title to the property * * * the gift is ineffective").
 {¶ 16} Applying the usual and customary meaning of "gift" to the statute at issue, we conclude a gift entails the donor's transferring title, ownership, or some other interest in the property capable of being gifted. Accordingly, if a wholesale distributor is charged under R.C. 4301.24 because they "gift" money or property to a retail permit holder, the wholesale distributor must have some form of ownership interest in the property capable of being transferred. Because the record fails to demonstrate that Heidelberg had any interest in the motorcycle, neither Heidelberg nor Jungle Jim's can be found to have violated R.C. 4301.24 by giving or receiving something of value.
 {¶ 17} R.C. 4301.24 also uses the term "loan." The usual and customary meaning of "loan" is "[a] lending. Delivery by one party to and receipt by another party of [sic] sum of money upon agreement, express or implied, to repay it with or without interest." Black's Law Dictionary (6 Ed. 1990) 936. As related to property other than money, "loan" is defined as "[a]nything furnished for temporary use to a person at his [or her] request, on condition that it shall be returned, or its equivalent in kind, with or without compensation for its use." Id. It is a "[b]ailment without reward, consisting of the delivery of an article by the owner to another person, to be used by the latter gratuitously, and returned either in specie or in kind. A borrowing of money or other personal property by a person who promises to return it." Id.
 {¶ 18} A gift differs from a loan because a loan involves an expectation of repayment or return of the item; a gift does not.Saum v. Moenter (1995), 101 Ohio App.3d 48 (holding that transaction at issue was a loan as opposed to a gift where the parties agreed to make monthly interest payments and pay money toward the principal whenever possible); Hammersmith v.Hammersmith, Defiance App. No. 4-03-15, 2004-Ohio-1854 (holding that although money given was originally intended as a loan evidenced by a promissory note and payment schedule, the loan was eventually forgiven as a gift where no payments had been made in over 14 years and no attempts were made to collect payment);Jump v. Jump (Nov. 30, 2000), Lucas App. No. L-00-1040. Accordingly, as with a gift, a person cannot loan property to another without having an interest in the property capable of being "loaned."
 {¶ 19} Because nothing in the record demonstrates that Heidelberg had any interest in the motorcycle capable of being loaned to Jungle Jim's, neither Heidelberg nor Jungle Jim's violated R.C. 4301.24. Were the statute written to implicate not only those who gift or loan, but also those who cause property to be gifted or loaned, the result here might be different. The present language of the statute, however, does not prohibit wholesale distributors from physically placing an item with a display.
 {¶ 20} Further, the evidence fails to demonstrate who allegedly loaned the motorcycle to Jungle Jim's: Heidelberg or Joe's Cycle Shop. The evidence relied upon to support Heidelberg's violation of R.C. 4301.24 is Guethlein's statement that he made a sales presentation to Jungle Jim's regarding the display and physically brought the motorcycle to Jungle Jim's the first week of May 2004. Guethlein's statement does not establish that Heidelberg, rather than Joe's Cycle Shop, loaned the motorcycle to Jungle Jim's. The evidence thus does not support a violation of R.C. 4301.24.
 {¶ 21} Appellants next contend the commission erred in finding all three of them violated Ohio Adm. Code4301:1-1-43(A)(1) where no evidence demonstrated that Heidelberg sold or furnished the motorcycle to Jungle Jim's at a cost less than the cost to Heidelberg. Ohio Adm. Code 4301:1-1-43(A)(1) prohibits a manufacturer or wholesale distributor from selling or furnishing items used at a retail permit holder's business "at a cost less than the full cost to the manufacturer or wholesale distributor." Similarly, a retail permit holder cannot "by any means" acquire any equipment used in connection with the conduct of the retail business from any manufacturer or wholesale distributor at "a cost less than the full cost to the manufacturer or wholesale distributor." Id. Heidelberg maintains that it incurred no cost in providing the motorcycle to Jungle Jim's, and it thus could not have furnished it to Jungle Jim's at less than Heidelberg's full cost. Jungle Jim's, in turn, asserts it did not acquire the motorcycle at a cost less than the cost to Heidelberg.
 {¶ 22} As appellants correctly argue, the state did not present evidence that Jungle Jim's acquired the motorcycle from Heidelberg, the wholesale distributor, at a cost less than the full cost to Heidelberg. Indeed, the record contains no evidence Heidelberg incurred any cost; nor does the record indicate Jungle Jim's paid Heidelberg for the motorcycle. The only relevant testimony was from Wallace, who stated that Jungle Jim's manager told him Heidelberg asked for permission to use the motorcycle in Jungle Jim's; Wallace admitted no one told him Jungle Jim's paid any compensation for the motorcycle. Although the common pleas court accepted Wallace's testimony as evidence of cost, it is insufficient to establish the cost element under Ohio Adm. Code4301:1-1-43(A)(1). Similarly, the investigator's noting the motorcycle was valued at $8,500 does not demonstrate that the retail permit holder acquired the item at a cost less than the full cost to the manufacturer or wholesale distributor. Equally true, it does not establish that Heidelberg sold or furnished the item to Jungle Jim's at a cost less than the full cost to Heidelberg. Because the necessary cost element has not been established, the trial court erred in affirming the commission's order finding a violation of Ohio Adm. Code 4301:1-14-3(A)(1).
 {¶ 23} Finally, the commission determined all three appellants violated Ohio Adm. Code 4301:1-1-43(B)(8). The commission's order is premised on an erroneous violation notice, as Ohio Adm. Code 4301:1-1-43(B) establishes the rule that can be violated; subsection (8) provides an exception to that rule.
 {¶ 24} Ohio Adm. Code 4301:1-1-43(B) provides that "[n]o manufacturer or wholesale distributor of alcoholic beverages shall furnish advertising specialties or utilitarian specialties to any retail permit holder at less than their full cost * * * except that: * * * (8) [u]tilitarian display enhancers, whether brand identified or not, which cost two hundred dollars or less, may be provided free of charge by manufacturers or suppliers to retail permit holders for use in alcoholic beverage displays on the retail permit premises. All utilitarian display enhancers must be returned to the manufacturer, supplier, or their agent, that furnished them when the display is taken down." The notice of violation sent to the three appellants charged them with a violation of Ohio Adm. Code 4301:1-1-43(B)(8), not 4301:1-1-43(B). As a matter of law, however, appellants cannot violate a stated exception to the conduct prohibited under the rule. Although courts normally give deference to an agency's interpretation of its own statutes and rules, Salem v. Koncelik,164 Ohio App.3d 597, 2005-Ohio-5537, the rule provides no support for doing so in this case. The specific violation charged is legally incorrect.
 {¶ 25} Moreover, even if the parties were properly charged with a violation of Ohio Adm. Code 4301:1-1-43(B) rather than 4301:1-1-43(B)(8), a violation requires evidence that the manufacturer or wholesale distributor furnished the utilitarian specialty to the retail permit holder "at less than their full cost." Again, the record contains no evidence to support a finding that Heidelberg furnished the motorcycle to Jungle Jim's at less than Heidelberg's full cost. Therefore, the trial court erred in affirming the commission's order finding a violation pursuant to Ohio Adm. Code 4301:1-1-43(B)(8) or 4301:1-1-43(B).
 {¶ 26} Accordingly, we sustain appellants' single assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and remand with instructions to enter judgment for appellants.
Judgment reversed and cases remanded with instructions.
Petree and McGrath, JJ., concur.